UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

        Plaintiff,

        v.                                                      Case No. 19-C-1174

JAMIE ADAMS, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Travis Delaney Williams, a prisoner who is representing himself, is proceeding on Eighth Amendment claims against Defendants Jamie Adams and Jolinda Waterman. Defendants were health services managers at Wisconsin Secure Program Facility, where Williams is incarcerated. Williams claims they were deliberately indifferent to his complaints about the allegedly deficient treatment he was receiving from Defendant Nurse Practitioner Sandra McArdle. On August 20, 2020, Adams and Waterman moved for summary judgment.[1] Their motion is fully briefed and ready for the court's decision.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson*

---

[1] McArdle, who is represented by separate counsel, also moved for summary judgment on August 20, 2020. The court will resolve her motion in a separate decision.

*v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)).

Under Civil Local Rule 56, a party must include with its motion a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law. The court will consider only proposed facts and responses to proposed facts that are clearly supported by admissible evidence in the record.[2] *See Jenkins v. Syed*, 781 F. App'x 543, 544–45 (7th Cir. 2019). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## BACKGROUND

The health services manager position is administrative in nature. Dkt. No. 159 at ¶ 5. While in that position, Waterman and Adams managed health care services by developing procedures, monitoring care plans, preparing reports, and acting as liaisons with other units and outside providers. *Id.* at ¶ 4. They did not evaluate, diagnose, treat, or prescribe medications for inmates. *Id.* at ¶ 5. They also did not make referrals or approve treatment recommendations from

---

[2] Most of Williams' proposed facts and responses to Defendants' proposed facts contain speculation or legal conclusions and/or rely on inadmissible hearsay or haphazardly cite to medical records that do not support his proposed fact or response.

offsite providers. *Id.* Inmates' medical care is provided by health services nursing staff and advanced care providers. *Id.*

Inmates seeking heath care or requesting information can file a health services request, which is triaged by nursing staff within twenty-four hours of receipt. *Id.* at ¶¶ 9–10. Health services managers do not typically see a health services request unless nursing staff forwards it to them. *Id.* at ¶ 11. Williams says he filed hundreds of health services requests (Defendants dispute that Williams filed "hundreds" of requests, but they do agree he filed "an excessive amount" of requests). Dkt. No. 269 at ¶ 17; Dkt. No. 159 at ¶ 12. Defendants say all of his health services requests were responded to by nursing staff. Dkt. No. 159 at ¶ 39. Nursing staff forwarded many of Williams' health services requests to Waterman and Adams for response. *See id.* at ¶¶ 13–14. Waterman and Adams explain that some of these requests concerned issues that had been previously addressed, while others were accusatory, condescending, or contained abusive language. *Id.*

In addition to submitting health services requests, Williams wrote letters to Adams complaining that his medical issues were not being addressed. *Id.* at ¶ 24. Adams investigated Williams' complaints, discussed his concerns with McArdle (who made adjustments to Williams' treatment plan), made accommodation requests to the Special Needs Committee, and updated Williams on the results of her efforts. *Id.* at ¶¶ 26–29. Adams responded to many of his letters and even met with him in person to discuss his complaints. *Id.* at ¶¶ 24–28; 32. Williams did not always cooperate with these efforts. *Id.* at ¶¶ 32–36.

Many of Williams' medical complaints required treatment by offsite providers. *Id.* at ¶ 41. Waterman and Adams did not have the authority to schedule or cancel offsite appointments, except for emergent appointments. *Id.* at ¶ 42. Advanced care providers, and in certain cases the Bureau

3

of Health Services' Medical Director, were authorized to make offsite referrals. *Id.* at ¶ 43. Nursing staff would schedule the appointment pursuant to an advanced care providers' orders, but appointment times were based on the offsite provider's availability. *Id.* at ¶ 44.

During the relevant time, Williams was seen frequently by health services staff to address his many medical concerns, and he was referred for offsite consultations with specialists in podiatry, audiology, urology, cardiology, pain management, rheumatology, dermatology, orthopedics, respiratory therapy, sleep lab, faint and fall clinic, ENT, hematology, and otolaryngology. *Id.* at ¶ 112. He was provided with medical treatment consisting of offsite diagnostic testing, pain medication, physical therapy, and conservative measures such as medications, treatment modalities (such as ice), and special needs accommodations to address his multiple health concerns. *Id.* at ¶ 113.

Specifically, Williams was seen by Gundersen Health Otolaryngology, Associated Hearing & Balance, and UW Audiology for complaints about hearing loss and other related issues. *Id.* at ¶¶ 45–49. He was referred to an offsite podiatrist for his foot problems and received several different pairs of Apex medical shoes after complaining that his shoes were too tight or too loose. *Id.* at ¶¶ 50–66. He received many different prescriptions for pain medication, including Duloxetine, Gabapentin, Lyrica, Keppra, Celebrex, and Tylenol. *Id.* at ¶¶ 67–80. He also received medication to treat his cough and congestion. *Id.* at ¶¶ 81–89. He received an ultrasound and multiple referrals to UW Urology for complaints of testicular pain and an overactive bladder. *Id.* at ¶¶ 93–107. He also received lidocaine cream and a jockstrap to address his scrotal pain. *Id.* at ¶ 91.

## ANALYSIS

The Eighth Amendment prohibits medical staff from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To determine if the Eighth Amendment has been violated in the prison medical context, [the court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (quoting *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016)).

For purposes of summary judgment, Defendants concede that Williams' many medical conditions satisfy the objective prong of the standard. The only question is whether Williams has produced sufficient evidence for a jury to reasonably conclude that Waterman and Adams were deliberately indifferent to his conditions.

Deliberate indifference is a subjective standard: "The defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). In addition, the defendant must have been personally responsible for the violation. *Rasho*, 856 F.3d at 478. "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). While a defendant does not have to directly participate in the violation to be held liable, he or she must have "know[n] about the conduct, facilitated[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Id.* (modifications in original) (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)).

Williams is suing Waterman and Adams for the alleged deliberate indifference they demonstrated in their roles as health services managers. He asserts that he consistently complained to them about the allegedly inadequate care he was receiving from his primary care providers (primarily McArdle), but they failed to investigate his complaints and/or turned a blind eye to his care providers' alleged deliberate indifference to his serious medical needs.

When health care officials act as administrators, they are entitled to rely on the judgment of the care providers treating an inmate. *Drinkwater v. Larson*, 794 F. App'x 523, 527 (7th Cir. 2020) (citing *Rasho*, 856 F.3d at 478–79). Waterman and Adams have presented evidence showing that they investigated Williams' complaints by reviewing his medical records, they spoke directly to McArdle about her treatment plans (which sometimes resulted in McArdle making adjustments), and they consistently responded to Williams' concerns both in writing and in person. Williams does not present evidence showing that Waterman and Adams had reason to believe that his care providers' treatment decisions were incorrect. They understood that Williams disagreed with his care providers' plans—he wanted specific care at a specific time. However, "[d]isagreements between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Not to mention that "inmates are not entitled to demand specific care." *Drinkwater*, 794 F. App'x at 527 (citations omitted). On this record, no jury could reasonably conclude that Waterman and Adams, in their roles as health services managers, were deliberately indifferent to Williams' complaints when they investigated his concerns and deferred to his care providers' judgment.

Williams also claims that Waterman and Adams interfered in his care by canceling doctors' orders, discontinuing equipment and medications, and manipulating referral orders to limit the

6

treatment his offsite providers could offer him. But Williams provides no admissible evidence to support these assertions. He points to his own written complaints and letters as well as ambiguous health records, but none of this supports his speculation that Waterman and Adams were interfering with in his care. To the contrary, Waterman and Adams explain, as health services managers, they "do not evaluate, diagnose, treat, or prescribe medications for an inmate . . . [nor do they] make referrals or approve treatment recommendations from offsite providers." Dkt. No. 159 at ¶ 5. All inmate medical care is provided by nursing staff and the advanced care providers. *Id.* at ¶ 6. Based on this evidence, no jury could reasonably conclude that Waterman and Adams showed deliberate indifference to Williams' serious medical conditions by interfering with his providers' care.

**IT IS THEREFORE ORDERED** that Waterman and Adams' motion for summary judgment (Dkt. No. 157) is **GRANTED**.

Dated at Green Bay, Wisconsin this 29th day of December, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge